***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except with modifications to Findings of Fact #1 through #5 and #29 through #33, the deletion of Conclusion of Law #7 and modifications to former Conclusion of Law #9 now Conclusion of Law #8 and modifications to Award #2 with respect to sanctions.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties at the hearing and after the hearing as
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The named employer is insured by American Home Insurance.
4. The parties agree that plaintiff's average weekly wage is $144.63, yielding a compensation rate of $96.43.
5. The parties stipulate into evidence as Stipulated Exhibit #1, the pre-trial agreement, as modified and initialed by the parties.
6. The parties stipulate into evidence as Stipulated Exhibit #2, medical records.
7. The parties stipulate into evidence as Stipulated Exhibit #3, plaintiff's answers to defendants' first set of interrogatories.
8. The parties stipulate into evidence as Stipulated Exhibit #4, plaintiff's recorded statement.
9. The parties stipulate into evidence as Stipulated Exhibit #5, plaintiff's January 31, 2000 statement to defendant-employer.
10. The parties stipulate into evidence as Stipulated Exhibit #6, August 23, 2002 order, allowing Dr. Flood's July 12, 2002 narrative report into the record.
 RULINGS ON EVIDENTIARY MATTERS
The objections contained in Deposition of Dr. Harris and Dr. France are ruled upon in accordance with the applicable rule of law and the Opinion and Award in this case.
 ***********
Based upon all the competent evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was thirty years old with a high school education. Plaintiff was hired as a stockman for defendant-employer on November 8, 1999. On January 23, 2000, plaintiff was working with defendant-employer gathering shopping carts in the parking lot when he was struck by a car. Plaintiff yelled out to the driver and tried to get out of the car's way, but was unable to do so and was struck. Plaintiff estimated that the car was traveling approximately twenty miles per hour when he alleges he was struck on his right side and knocked or rolled for approximately six to eight feet. Defendant-employer immediately received notice of plaintiff's accident, an ambulance was called, and plaintiff was transported to the emergency room. Plaintiff was examined at the emergency room for injuries to his back and right hip and x-rays were taken. Plaintiff was then treated and released.
2. On January 23, 2000 officer Reginald K. Watkins of the Spring Lake Police Department was called to investigate plaintiff's accident. Officer Watkins arrived at the scene within a few minutes and observed that plaintiff was still lying on the ground. Officer Watkins observed that the carts plaintiff was pushing were still upright and joined together. The carts were less than a foot away from the bumper of the car, which indicated that the speed of the car at impact was low. It had snowed the previous day and the white car was covered in gray dirt and salt accumulations. He was able to match the smudge marks on the bumper with the location of where the carts hit. However, there were no other smudge marks on either the bumper or the top of the trunk, which would have corresponded to where plaintiff claimed to have been hit. Officer Watkins interviewed the driver of the vehicle, that had struck plaintiff and the shopping carts, as there were no other witnesses to this accident. Based upon his investigation Officer Watkins completed an accident report on January 23, 2000. In his accident report Officer Watkins described plaintiff's accident as follows: "vehicle #1 was attempting a backing maneuver on PVA Southwinds Plaza when an employee of Wal-Mart, a pedestrian was pushing three shopping carts across the parking lot, the pedestrian yelled at the driver of the vehicle, attempting to get the driver's attention, at which time he was struck by vehicle #1."
3. Officer Watkins testified that he knew Monica Faison, who worked for defendant-employer and that he had told Ms. Faison that he did not believe plaintiff's accident happened the way plaintiff had described it. This conversation Officer Watkins testified that he had with Ms. Faison was not made a part of his official accident report at any time. This unofficial conversation was apparently never reduced to any type of written statement or form. Furthermore, Officer Watkins testified that he had previously worked for defendant-employer as a "loss-prevention" officer.
4. Officer Watkins stated that the purpose of generating an "accident-report" was to describe what happened and that it is important to tell the facts. On Officer Watkins's official accident report he determined as a fact that plaintiff, an employee of defendant-employer, was struck by a vehicle while he was pushing shopping carts across the parking lot. The Full Commission gives greater weight to plaintiff's testimony, Officer Watkins' official accident report, which corroborates plaintiff's testimony and plaintiff's January 31, 2000 statement of his accident on January 23, 2000 than to Officer Watkins testimony at the hearing before the deputy commissioner. In addition, the medical evidence presented further corroborates plaintiff's testimony and his January 31, 2000 statement to defendant-employer.
5. Defendants denied plaintiff's claim based upon Officer Watkins statements that he did not believe that plaintiff's accident as described based on his own observations at the scene.
6. Following plaintiff's January 23, 2000 accident he received medical treatment by a number of medical providers. Plaintiff was placed on light duty work status and given specific work restrictions.
7. Plaintiff was seen by Dr. Darren L. Harris on January 24, 2000. At that time, Plaintiff was suffering from pain in his back, hip, right ankle and right knee. Plaintiff was instructed to avoid lifting, bending and twisting for one week.
8. Plaintiff continued to be treated by Dr. Harris periodically for his lower back and hip pain.
9. Following plaintiff's January 23, 2000 accident, defendant-employer instructed plaintiff to obtain medical treatment at U.S. Healthworks. Plaintiff was initially seen at U.S. Healthworks on January 31, 2000. Plaintiff was experiencing pain in his right hip, right leg and lower back. A physical examination revealed positive straight leg raising that was greater on the right than the left. Plaintiff was diagnosed with lumbar trauma with radiculopathy and neurological findings. Plaintiff was continued on light duty work status with restrictions.
10. According to plaintiff's medical recommendations, he returned to work with defendant-employer on February 1, 2000 and was placed on light duty work status with specific work restrictions. Plaintiff continued with defendant-employer in this light duty work status until March 10, 2000.
11. On March 10, 2000 plaintiff was forced to end his employment with defendant-employer due to his wife, who is active duty military, receiving orders to move to Texas. Even though plaintiff had to end his employment with defendant-employer, his medical condition had not changed, nor had his work restrictions been changed.
12. Following plaintiff's move to Texas, his injuries as a result of his January 23, 2000 accident continued to cause him problems and grew worse.
13. After plaintiff moved to Texas, he continued to search for employment with a number of different employers, but was not hired. Plaintiff was able to get a part-time job as a pizza delivery man for about four (4) months. Plaintiff did not provide any wage documentation showing how much wages he had earned at this job, nor any documentation showing what dates he had worked at this job.
14. Plaintiff was seen at Darnell Army Community Hospital on May 23, 2000. Plaintiff was suffering from back pain and was seeking a referral to an orthopaedic physician.
15. Plaintiff began treatment with Dr. Flood on September 18, 2000. Plaintiff was continuing to suffer from back pain that was radiating into his right hip. Plaintiff was diagnosed with chronic lower back pain. Dr. Flood recommended that a lumbar MRI be performed.
16. This MRI was performed on October 4, 2000. The results of the MRI revealed that Plaintiff had a central right paracentral disc protrusion at L5-S1 and degenerative disc disease at L4-S1. On October 18, 2000, Dr. Flood discussed surgical options with Plaintiff.
17. Plaintiff underwent surgery on December 19, 2000, to include a decompressive lumbar laminectomy of L4 with medial fasciectomies and foraminotomies at L4-5, a decompressive lumbar laminectomy of L5 with bilateral medial fasciectomies and foraminotomies at L5-S1 and a diskectomy of L5-S1. Plaintiff was discharged from the hospital on December 21, 2000.
18. At the time of plaintiff's discharge from the hospital on December 21, 2000, Dr. Flood did not recommend a return to work date, and instructed plaintiff to do no lifting for three months.
19. Plaintiff was seen by Dr. Flood on February 14, 2001. At that time, plaintiff stated that his pain was completely resolved, that he was doing well, and that he did not need a follow-up visit. Dr. Flood believed that plaintiff had made remarkable progress, that plaintiff's prognosis was excellent, and he released plaintiff on an as needed basis. At that time Dr. Flood released plaintiff to some light duty work, with no lifting greater than forty pounds.
20. On February 14, 2001, Dr. Flood stated that after a full three months following plaintiff's December 19, 2000 surgery, that he was released to return to unrestricted work. The last time plaintiff was seen by Dr. Flood for his back and leg symptoms was on February 14, 2001, and no further medical treatment for plaintiff was recommended.
21. A period of three full months following plaintiff's December 19, 2000 surgery would place the date of plaintiff's release to unrestricted work at on or about March 20, 2001.
22. Dr. Flood did not believe that plaintiff's neck complaints and persistent headaches were related to his December 19, 2000 surgery. Dr. Flood assessed plaintiff with simple neck pain with cephalgia, and no follow-up visits were scheduled.
23. In Dr. Flood's opinion, plaintiff's symptoms in his lower extremities and his back were the result of plaintiff's January 23, 2000 accident. According to Dr. Flood, plaintiff's December 19, 2000 surgery was necessitated in order to relieve plaintiff's resulting symptoms, and that this surgery resulted in the full resolution of plaintiff's symptoms.
24. After giving due consideration to plaintiff's testimony and the record evidence along with the medical evidence, greater weight is given to plaintiff's testimony and the medical evidence which supports or corroborates plaintiff's allegations.
25. Plaintiff has shown by the greater weight of the competent credible evidence and medical evidence of record, that on January 23, 2000 he sustained an injury by accident arising out of and in the course of his employment with defendant-employer, resulting in chronic back pain and symptoms in his lower extremities, and necessitating surgery performed on December 19, 2000.
26. As a direct and proximate result of the injuries sustained by plaintiff on January 23, 2000, and his resulting medical conditions, plaintiff was unable to return to work earning the same wages he earned before his injury, or any wages, in his former employment or any other employment from January 24, 2000 until February 1, 2000, when he returned to work on light duty with defendant-employer, and from March 10, 2000 until March 20, 2001, the date plaintiff was released to unrestricted employment, except for the period of time that plaintiff earned wages working part-time delivering pizza.
27. Plaintiff is entitled to have defendants provide all medical treatment necessitated by his January 23, 2000 compensable back injury.
28. Plaintiff's average weekly wage was stipulated by the parties as $144.63, which yields a compensation rate of $96.43 per week.
29. There has been no competent evidence presented to show that plaintiff's back and leg injuries were caused by, or were the result of any incident other than his January 23, 2000 work-related injury. There has been no medical evidence presented to contradict that plaintiff's back and leg injuries were caused by, or resulted from any incident other than his January 23, 2000 work-related injury. In fact, plaintiff's January 31, 2000 written statement to defendant-employer, the January 23, 2000 accident report, and his testimony at the hearing have all been consistent. Accordingly, less weight is given to the testimony of Officer Watkins which was offered to contradict that plaintiff sustained an injury by accident on January 23, 2000.
30. Defendants brought this action based on contradicting statements by the investigating officer. Although, his accident report indicated that the incident occurred as plaintiff alleged, the officer gave defendants sufficient reason to question that the accident had occurred as plaintiff had reported. This workers' compensation action involved substantial questions of both fact and law, and the prosecution and defense of the action was not stubborn, unfounded or litigious.
31. According to Dr. Flood, plaintiff had reached maximum medical improvement on February 14, 2001. However, plaintiff has not yet been evaluated for any permanent impairment by Dr. Flood, or by any of his medical providers.
32. Plaintiff has had several motor vehicle accidents prior to his January 23, 2000 accident, resulting in some back problems to plaintiff. However, there was no evidence presented that these prior problems resulted in any disability, or necessitated continuing medical treatment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. On January 23, 2000, plaintiff sustained an injury by accident arising out and in the course of employment with defendant-employer, which resulted in chronic back pain, and symptoms in his lower extremities, and necessitating surgery performed on December 19, 2000. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of the injuries sustained by plaintiff on January 23, 2000, and his resulting medical conditions, plaintiff was unable to return to work earning the same wages he earned before his injury, or any wages, in his former employment or any other employment from January 24, 2000 until February 1, 2000, when he returned to work on light duty with defendant-employer, and from March 10, 2000 until March 20, 2001, the date plaintiff was released to unrestricted employment except for the period of time that plaintiff earned wages working part-time delivering pizza. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants provide all medical treatment necessitated by his January 23, 2000 compensable back injury. N.C. Gen. Stat. § 97-25.
4. Plaintiff's average weekly wage was $144.63, which yields a compensation rate of $96.43 per week. N.C. Gen. Stat. § 97-2(5).
5. As a direct and proximate consequence of plaintiff's compensable injury on January 23, 2000, plaintiff is entitled to temporary total disability compensation at a rate of $96.43 per week from January 24, 2000 until February 1, 2000 and from March 10, 2000 until March 20, 2001. N.C. Gen. Stat. § 97-29.
6. Defendants are entitled to a deduction for the undetermined wages plaintiff earned while working part-time delivering pizza. N.C. Gen. Stat. § 97-30.
7. Plaintiff is entitled to any compensation for permanent partial impairment, if any, as may be determined by further medical evaluation. This entitlement to any permanent partial impairment remains an issue for the parties, until it can be subsequently resolved by agreement, or by further litigation. N.C. Gen. Stat. § 97-31.
8. The hearing of this matter was reasonably defended, and therefore no attorney's fees should be assessed pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of Fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to attorney's fees hereinafter approved, defendants shall pay temporary total disability compensation to plaintiff at a rate of $96.43 per week from January 24, 2000 until February 1, 2000, and from March 10, 2000 until March 20, 2001. Such amount that has already accrued shall be paid in a lump sum.
2. An attorney's fee of twenty-five percent (25%) of the amounts due plaintiff under this Award is hereby approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff under Paragraph 1 of this Award and shall be paid directly to plaintiff's counsel.
3. Defendants are entitled to a deduction for the undetermined wages plaintiff earned while working part-time delivering pizzas. N.C.G.S. § 97-30.
4. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury when bills for same have been submitted to and approved by the Industrial Commission, for so long as such may reasonably be required to effect a cure, and give relief or lessen plaintiff's period of disability.
5. Defendants shall pay the costs.
This the 5th day of April 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN